**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| **MATTHEW HUNSINGER and** | ) | |
| **MICHELLE ALLEN** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | NO. _____ |
| | ) | |
| **ROBYN BOWMAN, JEAN BRENNAN**, | ) | |
| **PHOENIX ASSET GROUP, LLC,** | ) | |
| **BRENNAN HOLDINGS, LLC,** | ) | |
| **JORDAN AKINS,** | ) | |
| **AKINS CONSULTING GROUP, LLC, and** | ) | |
| **DELTA CREDIT MANAGEMENT, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES AND**
**<u>DEMAND FOR JURY TRIAL</u>**

**<u>I. INTRODUCTION</u>**

1.

This is an action for actual and statutory damages brought by individual consumers for Defendants' intentional violations of the Georgia Fair Business Practices Act ("FBPA") based upon violations of the Fair Debt Collections Practices Act ("FDCPA), and concurrent state law claims. The Plaintiff alleges that the three individual Defendants, Robyn Bowman, her mother, Jean Brennan, and Jordan Akins, in the course and scope of their employment by and/or through their ownership of Defendant Delta Credit Management (via convoluted ownership structures and several corporate shell companies) created a fictitious collection agency and used that fictitious collection agency to attempt to collect from Plaintiffs debts no longer owed. Plaintiffs are seeking in excess of $75,000.00 in damages.

## II. JURISDICTION AND VENUE

2.

Subject matter jurisdiction of this Court arises under 28 U.S.C. § 1332 and (tangentially 28 U.S.C. §1331 due to questions of fact arising under 15 U.S.C. § 1692k(d)), and 28 U.S.C. § 1337.  Supplemental jurisdiction for the state law claims exists pursuant to 28 U.S.C. § 1367. The amount in controversy exceeds $75,000.00

3.

Venue is proper in this District because the acts and transactions occurred here, the Plaintiffs reside in Georgia, and the Defendants, by and through their corporate entities, regularly conduct and transact business here.

## III. PARTIES

4.

Plaintiff Matthew Hunsinger (hereinafter "Hunsinger") is a natural person residing in Georgia, and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

5.

Plaintiff Michelle Allen (hereinafter "Allen") is a natural person residing in Georgia, and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

6.

Defendant Robyn Bowman (hereinafter "Bowman") is a natural person residing in Carver County, Minnesota, and can be served at her residence at 8345 Suffolk Drive, Chanhassen, Minnesota, 55317.

7.

Defendant Phoenix Asset Group, LLC., (hereinafter "Phoenix") is a third-party debt buyer with its principal place of business in Carver County, Minnesota.

8.

Defendant Phoenix is a "debt collector" as that terms is defined by 15 U.S.C. § 1692a(6).

9.

Defendant Phoenix may be served through its registered agent for service of process, Robyn Bowman, at 2025 Coulter Boulevard, Suite 100, Chanhassen, Minnesota, 55317.

10.

According to the Minnesota Secretary of State, Defendant Bowman is the sole member of Defendant Phoenix.

11.

Upon information and belief, however, Defendant Jean Brennan (hereinafter "Brennan") is a silent partner of Phoenix and the primary source of funding for Phoenix, providing money for the purchase of debt portfolios, employee and independent contractor payroll and other business contributions.

12.

Defendant Brennan Holdings, LLC (hereinafter, "Brennan Holdings") is, according to the Arizona Corporation Commission, a limited liability consulting business formed on or about July 7, 2020.

13.

Defendant Brennan Holdings is, according to the Arizona Corporation Commission, managed solely by Defendant Bowman.

14.

Defendant Brennan Holdings may be served through its registered agent for the service of process who is, according to the Arizona Corporation Commission, Defendant Bowman and whose address for service of process is 4600 North 68th Street, #345, Scottsdale, Arizona 85251.

15.

Defendant Jordan Akins (hereinafter "Akins") is a natural person, residing in Michigan, who may be served at his residence at 926 Bretton Road, Lansing, Michigan, 48917-3109.

16.

Defendant Akins Investments, LLC (hereinafter "Akins LLC"), formed on or about July 2, 2020, is a limited liability corporation organized under the laws of, and operating from, the state of Michigan.

17.

According to the Corporation Division of the Michigan Secretary of State, Defendant Akins is the sole member of Defendant Akins, LLC.

18.

Defendant Akins, LLC's may be served through its registered agent for the service of process, Karlton Akins, 2931 West Outer Drive, Detroit, Michigan, 48221.

19.

Defendant Delta Credit Management, LLC., (hereinafter "Delta") is a third-party debt collection agency with its principal place of business in Michigan.

20.

Defendant Delta is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

21.

According to the Corporations Division for the Michigan Secretary of State, Defendant Delta was formed on or about July 2, 2020 and is still active as of the filing of this action.

22.

Upon information and belief, Defendant Akins, LLC is a corporate owner of Defendant Delta.

23.

Upon information and belief, Defendant Brennan Holdings is a corporate owner of Defendant Delta.

24.

Defendant Bowman is a 22% owner of Delta, and upon information and belief Jean Brennan is a silent partner in Delta, providing funding for the purchase of debt portfolios (upon information and belief, because her daughter, Bowman, is prohibited from purchasing debt in her own name), employee salaries and other operational expenses.

25.

Delta may be served via mail through its registered agent for service of process, Registered Agents, Inc., 2222 West Grand River, Suite A, Okemos, Michigan 48664

26.

Defendant Jean Brennan may be served at her residence located at 3052 Woodlark Lane, Eagan, Minnesota 55121-1915

## FACTUAL ALLEGATIONS

27.

The Plaintiffs reassert, reallege and incorporates by reference paragraphs 1- 26 as if fully stated herein.

28.

Plaintiffs incurred individual debts (hereinafter referred to collectively as "the Subject Debt").

29.

The Subject Debt was an obligation to pay money arising out of a transaction in which the money or services which were the subject of the transaction were primarily for personal, family or household purposes.

30.

The Subject Debt was a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

31.

Plaintiffs defaulted on the Subject Debt.

32.

Upon information and belief, Defendant Phoenix either purchased Plaintiffs' debt from the original creditor or a predecessor in interest of the Subject Debt or was assigned the right by the original creditor or predecessor in interest of the Subject Debt to collect the Subject Debt.

33.

Rather than attempt to collect the debt itself, Defendant Phoenix engaged the services of a collection agency known as URS Solutions, LLC. (hereinafter "URS"), to collect the Subject Debt from Plaintiff.

34.

URS communicated with Plaintiff in an attempt to collect the above-referenced Subject Debt.

35.

URS successfully collected the Subject Debt from, among others, Plaintiff Hunsinger and Allen.

36.

Plaintiffs Hunsinger and Allen paid URS and settled their accounts with URS, the collection agency collecting on behalf of Defendant Phoenix.  As URS acted as Phoenix's agent, said subject debt was settled between Phoenix and Plaintiffs.

37.

At some point after paying his debt to URS, Plaintiff Hunsinger received at least one communication from a company calling itself Arrow Credit Adjusters, LLC (hereinafter "Arrow") which attempted to collect a debt he had already paid, and which also incorrectly stated that he owed the full balance, a violation of the FDCPA.

38.

Plaintiff Allen also received at least one communication from Arrow which attempted to collect a debt she had already paid, and which also incorrectly stated that she owed the full balance even though she had already settled her account with URS, a violation of the FDCPA.

39.

The communication from Arrow to Plaintiffs attempted to collect from Plaintiffs the same Subject Debt that Plaintiffs had already paid to the original collection agency, URS.

40.

Plaintiffs then contacted the collection agency they had already paid - URS - to complain about the communication from Arrow and to demand a refund from URS.

41.

URS confirmed to Plaintiffs that Plaintiffs had paid and settled the Subject Debt and that URS had remitted the appropriate portion of Plaintiff's payment to Defendant Phoenix.

42.

Still stressed, worried, concerned and that he had been defrauded by URS and believing he may still owe the Subject Debt, Plaintiff Hunsinger, at some point late in January, 2021, mailed a money order to Arrow at its listed address in Ohio.

43.

Still stressed, worried concerned and angry that she had been defrauded by URS and believing she may still owe the Subject Debt, Plaintiff Allen, on or about January 11, 2021, sent money to Arrow at its listed address in Ohio.

44.

After receiving the inquiry and the request for a refund from Plaintiff, and in an effort to find out why Arrow was contacting its clients, a representative of URS called Arrow at the telephone number provided in the communication to the Plaintiff from Arrow.

45.

The person who answered the call initiated by the representative of URS identified himself as "Delta Credit."

46.

Because of a prior business relationship with Defendant Akins, the URS representative who called Arrow recognized the voice of the person who answered the call as Defendant Akins.

47.

When Plaintiff learned that Arrow was, in fact, attempting to collect a debt that he had already paid, Plaintiff began to investigate further.

48.

A review of the communication from Arrow to Plaintiff showed a working telephone number, a physical address in Ohio, and a web address.

49.

According to the office of the Ohio Secretary of State, Arrow is not registered as a business entity nor is it registered as a sole proprietorship using the trade name Arrow Credit Adjusters, LLC within the state of Ohio and therefore is a non-existent business entity in Ohio.

50.

The physical address for Arrow provided in the communication sent to Plaintiff belongs to a hotel or some other operating business, not a collection agency.

51.

After further investigation, Plaintiffs discovered that Arrow is a fictitious collection agency formed by Defendant Delta, either alone or in conjunction with Defendant Phoenix, and/or Defendant Bowman, and/or Defendant Jean Brennan and/or Defendant Akins and/or Defendant Brennan and/or Defendant Akins LLC.

52.

After further investigation, Plaintiffs discovered that the Arrow's website was registered to Defendant Delta. Plaintiffs attach the evidence of registration of Arrow by Delta as Exhibit A.

53.

Upon information and belief Arrow, the fictitious company and its website was conceived and created by Defendant Bowman, Defendant Jean Brennan, and Defendant Akins and/or Defendant Brennan and/or Defendant Akins LLC and/or Defendant Delta.

54.

At all times relevant herein, Defendant Bowman, either on her own or as the owner, member, manager or shareholder of the other corporate Defendants used the United States mail service, telephone, email and/or other instrumentalities of interstate and intrastate commerce to attempt to collect a debt allegedly owed to another in the state of Georgia.

55.

That at all times relevant herein, Defendant Phoenix, by and through its owners, managers and/or employees, Defendant Bowman and Defendant Jean Brennan, used the United States mail service, telephone, email and/or other instrumentalities of interstate and intrastate commerce to attempt to collect a debt allegedly owed to another in the state of Georgia.

56.

That at all times relevant herein, Defendant Akins, either on his own or as an owner, member, manager or shareholder of the corporate Defendants used the United States mail service, telephone, email and/or other instrumentalities of interstate and intrastate commerce to attempt to collect a debt allegedly owed to another in the state of Georgia.

57.

That at all times relevant herein, Defendant Akins LLC, by and through its owner, Defendant Akins, used the United States mail service, telephone, email and/or other

instrumentalities of interstate and intrastate commerce to attempt to collect a debt allegedly owed to another in the state of Georgia.

58.

That at all times relevant herein, Defendant Brennan Holdings, by and through its owner, Defendant Bowman, used the United States mail service, telephone, email and/or other instrumentalities of interstate and intrastate commerce to attempt to collect a debt allegedly owed to another in the state of Georgia.

59.

That at all times relevant herein, Defendant Delta, by and through its owners, Defendant Jean Brennan, Defendant Brennan and Defendant Akins, LLC, and their owners, Bowman and Akins, used the United States mail service, telephone, email and/or other instrumentalities of interstate and intrastate commerce to attempt to collect a debt allegedly owed to another in the state of Georgia.

60.

Upon information and belief, the acts of the respective Defendants alleged herein were performed by Defendants themselves and/or by employees of Defendants acting within the course and scope of their actual or apparent authority.

**61**.

Plaintiffs allege that Defendants Delta and Phoenix and/or their owners, members, managers, employees and/or their agents violated the FDCPA by creating and then sending out a communication from a fake collection agency to Plaintiff in an attempt to collect a debt subject to the protective provisions of the FDCPA, and also violated multiple provisions of the FDCPA,

including but not limited to: 15 U.S.C. §1692(d); 15 U.S.C. §1692e(2)(A); 15 U.S.C.

§1692e(10); 15 U.S.C. §1692e(14); and 15 U.S.C. §1692g.

62.

The actions of Defendant Delta and/or their owners and/or agents caused Plaintiffs

emotional distress including, but not limited to frustration, anger, anxiety and fear that their

private financial information was in the hands of scammers and, additionally caused economic

damage by inducing Plaintiffs to pay a debt that was no longer owed by them.

**COUNT I AGAINST DELTA**
**VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT**

63.

Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 62 above

as if fully set forth herein.

64.

The actions Defendant Delta and/or their owners and/or agents violated the FDCPA, as set

out more fully in paragraphs 1-61.

65.

The actions Defendant Delta and/or their owners and/or agents constitute unfair or

deceptive acts or practices in consumer transactions in trade or commerce and therefore violate

Georgia's Fair Business Practices Act. ("FBPA"), O.C.G.A § 10-1-390 *et seq.*

66.

Courts have recognized that violations of the FDCPA are also violations of the FBPA. See

*1st Nationwide Collection Agency Inc v Werner*, 288 Ga. App. 457, 458-60, 654 S.E.2d 428,

430-31 (2007).

67.

The actions Defendant Delta and/or its owners and/or agents, in violation of Georgia's FPBA (as well as the FDCPA), were intentional in nature and part of a business model designed to collect debts based on false, misleading, deceptive, unfair, unconscionable, abusive, harassing and oppressive collection practices and took place within the proscribed statute of limitations.

68.

None of the Defendants named herein maintains a place of business in Georgia and do not keep assets within the State of Georgia, and therefore the requirements of O.C.G.A § 10-1-399(b) do not apply to Plaintiff's claims in this lawsuit.

69.

Plaintiffs seek actual damages from Defendant Delta and/or its owners and/or agents, for the emotional distress and fear caused by the actions of Defendant Delta and/or its owners and/or agents.

70.

Plaintiffs seek damages of three times actual damages against Defendant Delta and/or their owners and/or agents, for their intentional and purposeful actions in attempting to collect a debt in violation of Georgia's FBPA.  O.C.G.A § 10-1-399(c).

71.

Plaintiff further seeks recovery of reasonable attorney's fees and costs for this action in accordance with O.C.G.A § 10-1-399(d).

## COUNT II AGAINST PHOENIX
## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT

**72.**

Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 71 above as if fully set forth herein.

73.

The actions of Phoenix and/or their owners and/or agents violated the FDCPA, as set out more fully in paragraphs 1-61.

74.

The actions of Phoenix and/or their owners and/or agents constitute unfair or deceptive acts or practices in consumer transactions in trade or commerce and therefore violate Georgia's Fair Business Practices Act. ("FBPA"), O.C.G.A § 10-1-390 *et seq.*

75.

Courts have recognized that violations of the FDCPA are also violations of the FBPA. See *1st Nationwide Collection Agency Inc v Werner*, 288 Ga. App. 457, 458-60, 654 S.E.2d 428, 430-31 (2007).

76.

The actions of Phoenix and/or its owners and/or agents, in violation of Georgia's FBPA (and the FDCPA), were intentional in nature and part of a business model designed to collect debts based on false, misleading, deceptive, unfair, unconscionable, abusive, harassing and oppressive collection practices.

77.

Phoenix does not maintain a place of business in Georgia and does not keep assets within the State of Georgia, and therefore the requirements of O.C.G.A § 10-1-399(b) do not apply to Plaintiffs' claims in this lawsuit.

78.

Plaintiffs seeks actual damages from Phoenix and/or its owners and/or agents, for the emotional distress and fear caused by the actions of Defendant Delta and/or its owners and/or agents.

79.

Plaintiffs seeks damages of three times actual damages against Phoenix and/or their owners and/or agents, for their intentional and purposeful actions in attempting to collect a debt in violation of Georgia's FBPA.  O.C.G.A § 10-1-399(c).

80.

Plaintiff further seeks recovery of reasonable attorney's fees and costs for this action in accordance with O.C.G.A § 10-1-399(d).

## COUNT III AGAINST ALL DEFENDANTS
## FRAUD

81.

Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 80 above as if fully set forth herein.

82.

By communicating to Plaintiffs that the Subject Debt was owed, either in full and/or owed to a non-existent business entity when Defendants knew Plaintiff had settled his account and that the stated balances were incorrect, Defendants made false representations.

83

The representation made to Plaintiff by Defendants was made with the knowledge that the representation was false or with reckless disregard as to whether it was true.

84.

The representation made to Plaintiffs by Defendants were made with an intent to induce Plaintiffs to act, specifically, to make Plaintiff pay money that was not owed.

85.

The representations made to Plaintiffs by Defendants was reasonably (and actually) relied upon by Plaintiff Hunsinger to his economic detriment.

86.

The representations made to Plaintiffs by Defendants caused damage to Plaintiffs.

## COUNT IV AGAINST DELTA
## NEGLIGENT RETENTION, TRAINING AND SUPERVISION OF DEFENDANT DELTA'S EMPLOYEES

87.

Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 86 above as if fully set forth herein.

88.

Upon information and belief, the actions of Defendant's employees were intentional or at a minimum, grossly negligent.

89.

Upon information and belief, Defendant failed to reasonably and adequately supervise and train its employees when Defendant knew of the employee's intentions to engage in the conduct which caused Plaintiff's injury.

90.

Upon information and belief, Defendant failed to exercise ordinary care in the manner in which it retained, supervised and trained its employees, and in the manner in which it retained, supervised and trained its own supervisors.

91.

Upon information and belief, Defendant retained and continued to employ its employees, even after the conduct was brought to the attention of the owners.

92.

The lack of exercise of ordinary care in the retention, supervision and/or training of Defendant's employees evinces that entire want of care which would raise the presumption of conscious indifference to consequences, thus entitling Plaintiff to punitive damages

## (ALTERNATIVE) COUNT V AGAINST DELTA
## RESPONDEAT SUPERIOR

93.

Plaintiff repeats, reiterates and realleges the allegations set forth in paragraphs 1-91 above as if set forth fully herein.

94.

Defendant Delta is vicariously liable for the acts or omission of its employees' and/or owners negligent and/or intentional acts while in the course and scope of their employment.

95.

Defendant Delta is vicariously liable for its employees' negligent and/or intentional acts while in the course and scope of their employment as those acts and the employees' conduct were generally foreseeable and a natural consequence of their employment.

96.

Defendant Delta is vicariously liable for its employees' negligent and/or intentional acts while in the course of their employment because those acts could have been reasonably anticipated by Defendant.

97.

That as a result of the foregoing, Plaintiff has suffered damages and that said injuries were caused solely and wholly by reason of the negligence and carelessness of Defendant in the operation, management, training, maintenance, control, security and supervision of the employees within the premises.

## COUNT VI AGAINST AKINS AND AKINS LLC

## NEGLIGENT RETENTION, TRAINING AND SUPERVISION OF DEFENDANT AKIN'S CONSULTING'S EMPLOYEES

98.

Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 97 above as if fully set forth herein.

99.

Upon information and belief, the actions of Defendant Akins andAkins Consulting's employees were intentional.

100.

Upon information and belief, Defendants Akin and Akins Consulting's failed to reasonably and adequately supervise and train its employees when it knew of the employee's intentions to engage in the conduct which caused Plaintiffs' injury.

101.

Upon information and belief, Defendants failed to exercise ordinary care in the manner in which it retained, supervised and trained its employees, and in the manner in which it retained, supervised and trained its own supervisors.

102.

Upon information and belief, Defendants retained and continued to employ its employees, even after the conduct was brought to the attention of the owners.

103.

The lack of exercise of ordinary care in the retention, supervision and/or training of Defendant Akins and Akins Consulting's employees evinces that entire want of care which would raise the presumption of conscious indifference to consequences, thus entitling Plaintiffs to punitive damages

## COUNT VII AGAINST BOWMAN AND BRENNAN HOLDINGS

## NEGLIGENT RETENTION, TRAINING AND SUPERVISION OF DEFENDANT BRENNAN'S EMPLOYEES

104.

Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 103 above as if fully set forth herein.

105.

Upon information and belief, the actions of Defendant Bowman and Brennan Holding's employees were intentional.

106.

Upon information and belief, Defendant Bowman and Brennan Holdings failed to reasonably and adequately supervise and train its employees when Defendants knew of the employee's intentions to engage in the conduct which caused Plaintiff's injury.

107.

Upon information and belief, Defendant Bowman and Brennan Holdings failed to exercise ordinary care in the manner in which it retained, supervised and trained its employees, and in the manner in which it retained, supervised and trained its own supervisors.

108.

Upon information and belief, Defendant Bowman and Brennan Holdings retained and continued to employ its employees, even after the conduct was brought to the attention of the owners.

109.

The lack of exercise of ordinary care in the retention, supervision and/or training of Defendants' employees evinces that entire want of care which would raise the presumption of conscious indifference to consequences, thus entitling Plaintiff to punitive damages

**ALTERNATIVE COUNT VIII AGAINST DEFENDANTS BOWMAN, BRENNAN HOLDINGS, AKINS AND AKINS, LLC**
**RESPONDEAT SUPERIOR**

110.

Plaintiff repeats, reiterates and realleges the allegations set forth in paragraphs 1-108 above as if set forth fully herein.

111.

The above-named Defendants are vicariously liable for the acts or omission of its employees' and/or owners negligent and/or intentional acts while in the course and scope of their employment.

112.

The above-named Defendants are vicariously liable for their employees' negligent and/or intentional acts while in the course and scope of their employment as those acts and the employees' conduct were generally foreseeable and a natural consequence of their employment.

113.
.

The above-named Defendants are vicariously liable for their employees' negligent and/or intentional acts while in the course of their employment because those acts could have been reasonably anticipated by Defendant.

114.

That as a result of the foregoing, Plaintiffs have suffered damages and that said injuries were caused solely and wholly by reason of the negligence and carelessness of Defendants in the operation, management, training, maintenance, control, security and supervision of the employees within the premises.

**COUNT IX**
**CLAIM FOR PUNITIVE DAMAGES**

115.

Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 115 above as if fully set forth herein.

116.

Plaintiffs allege that Defendants and/or their owners, managers and/or agents acted willfully and with malice, wantonness, oppression or with the entire want of care which would raise the presumption of conscious indifference to the consequences of its actions, entitling Plaintiff to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

117.

Plaintiffs believe that the actions of these Defendants will mirror that of the allegations and admissions made by Bowman in the case of *Kaump v. Robyn Bowman and Phoenix Asset Group,* Case No. 27-cv-12649, recently filed in State of Minnesota, Hennepin County, 4th Judicial District, and will further demonstrate the requisite intent necessary for an award of punitive damages.

**WHEREFORE**, Plaintiff prays:

A.     that judgment be entered in Plaintiff's favor against Defendants for a sum of no less than $150,000.00:

Count I (FBPA) Delta

a.     for treble damages pursuant to O.C.G.A. §10-1-390 *et seq.;*

b.     for an award of actual damages proven at trial

c.     for such other and further relief as this Court finds to be just and proper;

Count II (FBPA) Phoenix

a.     for treble damages pursuant to O.C.G.A. §10-1-390 *et seq.;*

b.     for an award of actual damages proven at trial

c.     for such other and further relief as this Court finds to be just and proper;

Count III (Fraud)

a. for an award of actual and special damages proven at trial;

b. for punitive damages in an amount to be determined by the enlightened conscience of

a jury;

c. for such other and further relief as this Court finds to be just and proper;

Counts IV and/or V
(Negligent Supervision, Training or, alternatively Respondeat Superior)

a. for an award of actual and special damages proven at trial;

b. for an award of costs of litigation and reasonable attorney's fees;

c. for such other and further relief as this Court finds to be just and proper

Count VI
(Negligent Retention, Supervision, Training )

a. for an award of actual and special damages proven at trial;

b. for an award of costs of litigation and reasonable attorney's fees;

c. for such other and further relief as this Court finds to be just and proper

Count VII
(Negligent Retention, Supervision, Training )

a. for an award of actual and special damages proven at trial;

b. for an award of costs of litigation and reasonable attorney's fees;

c. for such other and further relief as this Court finds to be just and proper

Alternative Count VIII
(Respondeat Superior)

a. for an award of actual and special damages proven at trial;

b. for an award of costs of litigation and reasonable attorney's fees;

c. for such other and further relief as this Court finds to be just and proper

Count IX

    a.    for punitive damages in an amount to be determined by the enlightened conscience of

a jury.


This 5th day of January, 2023.


                       /s/ *Mark A. Carey, Esq.*

                       Mark A. Carey, Esq., GA Bar No. 109360

                       Law Offices of Mark A. Carey, P.C.

                       131 North Park Avenue

                       Buffalo, NY 14216

                       716-853-9243

                       markcareylaw@ymail.com